

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable J. R. Cornelius
County Attorney
Marion County
Jefferson, Texas

Dear Sir:

Opinion No. 0-7409
Re: Whether, under the pro-
visions of S. B. 167 and
Article 2900, Marion County
is eligible to receive $3.50
per pupil as transportation
aid when the total enumerated
scholastics, both white and
colored, exceed the statutory
limit.

We have your letter of September 17, 1946, request-
ing the opinion of this department with reference to a portion of
the provisions of Senate Bill 167 of the 49th Legislature. Your
letter is quoted in full as follows:

"I would like to have an opinion from your
Department with reference to a portion of the
provisions of Senate Bill #167 of the 49th Legis-
lature which pertains to State aid for trans-
portation for the school children of the various
counties of the State of Texas.

"Article #5 of this Bill, among other things,
has the following provision:

"'Provided further, that all of the
Counties having less than three enumerated
scholastics per square mile in the entire
county shall receive $3.50 per month per
pupil as transportation aid when there is
a need shown therefor as provided herein.'

"Marion County has 922 enumerated white scho-
lastics in the county, which is less than three per

square mile, and 2235 enumerated colored
scholastics in the County.

"Article 2900 of the Revised Civil
Statutes of Texas 1925, provides in substance
that separate schools shall be maintained for
white and colored children, and by virtue
thereof the schools of Marion County are forced
to maintain two separate transportation systems;
one for white children and one for the colored
children. In making up the budget for trans-
portation aid for white children they have
claimed the $3.50 per pupil as provided in the
portion of Senate Bill 167 above quoted, but
Mr. C. N. Spence, Executive Secretary of the
Equalization Division of the State Department
of Education refused to approve this amount for
transportation of the white children of Marion
County.

"I would like to have an opinion from your
Department as to whether or not, under the
facts above given, and in view of the provi-
sions of Senate Bill #167, and Article 2900,
Revised Civil Statutes, Marion County is entitled
to the $3.50 per pupil as transportation aid for
its white children."

Article 5 of Senate Bill 167 of the 49th Legisla-
ture, provides that the County shall be regarded as a unit in
applying for transportation aid. According to the facts stated
by you in your letter, Marion County has 922 enumerated white
scholastics and 2235 enumerated negro scholastics, a total of
3157 enumerated scholastics in the County. Marion County
comprises an area of 400 square miles (Texas Almanac). A mathe-
matical calculation by division indicates that the county has
an average of approximately 7.8 scholastics per square mile.
The pertinent provisions of Senate Bill 167, quoted by you above,
provide that all counties having less than three enumerated
scholastics per square mile in the entire county shall receive
$3.50 per month per pupil as transportation aid when there is a
need shown therefor as provided herein.

Obviously, the total enumerated scholastics in Marion County exceed three enumerated scholastics per square mile unless the white scholastics are considered as a separate unit. The Act provides the county shall be regarded as a unit and a careful examination of the entire chapter (S. B. 167) fails to reveal any language that would suggest an intendment by the Legislature that white scholastics and colored scholastics were to be enumerated separately for the purposes of the Act. The Chapter contains no specific definition of "enumerated scholastics" and the provisions of Section 5 of the Act above quoted merely use the term "three enumerated scholastics".

Article 1 of S. B. 167, Eligibility for Aid, Sec. 1, reads, in part, as follows:

> "State Aid under the provisions of this Act shall be distributed in such a way as to assist all school districts which have not fewer than twenty nor more than 1250 original enumerated scholastics within the grades classified to be taught remaining in the district after transfers out. . ."

Article 1, above quoted, is the general eligibility provision of the Chapter. Article 5 is a special provision of the Act relating entirely to transportation aid. Thus, we see that both the general provision for eligibility and the special provision for eligibility would prohibit Marion County from receiving the $3.50 per month for enumerated scholastics if the combined scholastics of both white and colored are considered together in determining the eligibility of a county unit for transportation aid.

The rule for construing any statutory act is the universal rule of determining the intention of the Legislature. We, therefore, shall confine the following authorities and citations to a determination of what the Legislature intended when listing the qualifications of a school for eligibility under the transportation provision of the Act.

Article VIII, sec. 7 of the Constitution of Texas reads as follows:

"Separate schools shall be provided for the
white and colored children, and impartial
provision shall be made for both."

Pursuant to such constitutional mandate, the Legis-
lature enacted a bill codified in Vernon's Annotated Civil Statutes
as Article 2900, which reads as follows:

"All available public school funds of this
State shall be appropriated in each county
for the education alike of white and colored
children, and impartial provisions shall be
made for both races. No white children
shall attend schools supported for colored
children, nor shall colored children attend
schools supported for white children. The
terms 'colored race' and 'colored children'
as used in this title include all persons of
mixed blood descended from negro ancestry."

The numerous statutes relating to schools in Texas have
specifically followed the constitutional provision for the segre-
gation of whites and colored scholastics but it is to be noted
that in each Act where a segregation was desired, specific pro-
visions for such are clearly stated. In providing a test for
eligibility based on the scholastic census, the Legislature was
not faced with a segregation question but could easily have
separated the "enumerated scholastics" had that been desirable.

The intention of the Legislature can be more clearly
determined by considering other articles and sections in the
Chapter. Article III, Salary Aid, Section 1 thereof, in providing
for teacher-pupil quota, reads in part as follows:

"The basis for calculation shall be the net scho-
lastic enumeration of white or colored race, as
the case may be, including transfers into the
district, provided such transfers are from dis-
tricts eligible to receive aid under Article I
of this Act for the current year. . . ."

From the above quoted Section of Article III, it is clear
that the Legislature recognized the necessity for considering
the enumerated scholastics separately when it used the language
"white or colored race", in considering an enumeration for teacher-

pupil quota. It is equally clear that Article 5 contains no such phrase that would indicate that the enumerated scholastics of white and colored should be considered separately in determining the eligibility of the county unit for transportation aid. Since the Legislature, in the very same chapter, recognized the need for a separation of the enumerated scholastics for eligibility under a specific aid, then we must conclude that the words "enumerated scholastics" means the composite enumeration of both white and colored when determining the eligibility of the unit for transportation aid.

In our opinion No. 0-5794, a copy of which is attached hereto for your information, this department advised that colored children are entitled to the same facilities for transportation to and from school as are white children and that whether such impartial facilities in the way of bus transportation are provided by furnishing separate buses for the two races, or by providing for the use of the same bus by the children of both races, is a matter not governed by any statutory law. It is a matter to be determined by the local school authorities. Logically, the Legislature could have contemplated that in many school districts in a county unit the buses might be shared by both colored and white scholastics and that the total enumerated scholastics of both white and colored shall be considered in determining the eligibility of the county unit.

Therefore, under the provisions of Senate Bill 167, it is the opinion of this department that Marion County is not eligible to receive $3.50 per month per pupil as transportation aid.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Harris Toler
Assistant

APPROVED OCT 3, 1946

ATTORNEY GENERAL OF TEXAS

HT:BT

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN